Good morning, may it please support Faye Arfon on behalf of Mr. Guo and I wanted to start basically with the jury selection issues. One I thought was very simple which is the leaving on a juror number who became the alternate who became juror number seven, the active duty police officer. And it seems that that would be simple. You have an officer who's clearly biased, he's clearly in favor of law enforcement. He doesn't, it's not that he doesn't. Everybody's in favor of law enforcement. I mean, you know, sometimes you get a police officer, he has a better view of what really goes on and it might surprise you. So I don't think, you're saying that just because someone is in law enforcement they ought to automatically be disqualified from being jurors? No, no, no, no. I don't, I'm not saying that at all. I'm saying that this is an He had a lot of credibility with what his brothers and sisters would say on the stand. And if it was close, either way, he would go with law enforcement. He referred to defense attorneys as not his favorite animal and that they twisted things. And, but prosecutors are pretty much straight up. So this seems to be a little bit more than just an officer who says, I've worked both sides, I can be fair, I'm going to listen to both sides. I mean, this was an officer who pretty much came forward and said, Well, the court, the court was pretty strenuous in questioning this person, though, and said, Look, I'm trying to figure out just how strong your dislike for one side is and your like for the other, because this is really important. And, you know, are you just going to be turning off the defense lawyer? And he says, No, absolutely not. So you would listen to her? Yes, absolutely. And they make a judgment based on what she says and what the evidence is in the case? Yes, sir. So, you know, don't we pretty regularly uphold when a trial judge is watching this individual and the person unequivocally says, Look, I'll follow the law? Well, he But there are cases of implied bias where they say, Sure, I can be fair. But, you know, they can't be fair based on, on Well, that goes back to Judge Pragerson's question, which is, does that mean because this was a reserve deputy, there's sufficient implied bias to overcome the under oath assertion that, Yes, I will absolutely listen to the defense lawyer and decide according to what the evidence shows? Well, I think the test is whether he can be fair and impartial. And in this case, he clearly couldn't. And What's our standard of review? The standard of review is, is abuse of discretion. Yes. So we have to be able to say that no reasonable trial judge could have looked at this situation, watched this person's facial expression and their manner of questions and determined that they were truthful when they said they would leave those biases aside. Well, it seems to me that when the, when the district court was asking the questions, the judge specifically did not say, Can you be fair and impartial? Can you lay aside those feelings of working with police and arresting defendants and a feeling of kinship that you feel with your fellow officers? Can you, can you put that aside and be fair? And whenever the judge tried to ask him a question, he, he, he never really said he could be fair. I mean, he, he, him and Hall. You know, you've spent a lot of time on this issue. You must have other issues. Okay. All right. Yes. I, I do want to spend also a little bit of time on the statute itself and the statute itself. It seems to me that when a law prohibits something, it should basically tell you, okay, you know, this is against the law. You know, this is against the law. In this case, you have a statute that, that says any order, regulation, law, anything promulgated pursuant to this statute is, is, is unlawful. And to, when, when, when I first looked at this, I thought, okay, is it the executive order that, that he, that he's charged with violating? Is it the executive order? Or is it a regulation? Or is it, well, they cited three regulations. Okay. Is it the first regulation, the second regulation, the third regulation? So in order to get to finding Mr. Guo, who's a Chinese citizen, guilty, you have to go from the statute itself down through several executive orders, into the regulations, and somewhere, someplace in those 500 pieces of regulations, you will find that there is a law that says it's illegal to export, export. Scalia. Are you making basically a vagueness argument or a notice argument, or are you making both? Both. Both. How's a person supposed to know, right, it is so broad that any, in other words, it's like you go up and down and sideways and somewhere. Well, counsel, what I'm trying to figure out, it seems to me that if we take your argument to its logical conclusion, there really cannot be a statute that refers to something outside the statute for the standard. Because what you're saying is, well, because you have to put the statute together with other documents that fill in the blanks, that's too hard. That's too much tracing or work for a regular person to know what they can't do. And I've never seen a case that says that, that you cannot have this sort of form of incorporation by reference at pain of having something be unconstitutionally vague or overbroad. Well, I, you know, I'm not really sure when I, when I, when I think most of the statutes that I've seen will say, okay, it's illegal to do X, Y, and Z. What they basically have is a whole chapter and leave it to some other agency. In other words, some of the cases I looked at, there is a specific executive order that will say, okay, you can't, you know, send goods to Iran. That's easy. Okay, that's easy. Well, but I guess what's hard about saying that you can't export things without permission that are on a list, and you have to go find out what the list is. Okay, but the list itself, once you get to it, is perfectly clear. Yes, well, I always thought when I looked at those regulations that I could see where a violation of the regulation would be a civil offense, because you don't have regulatory provisions, their own sentences in the back. So that would be easy. But in this case, I think the statute would be more clear if it said, okay, any executive orders, or give us the list of executive orders. Well, all you're saying is they could have been better writing the statute, which in my personal opinion could be said of, you know, 80 percent of the statutes we have to deal with. But the question is whether it fails the constitutional minimum. And the other aspect of that that I'd appreciate your addressing is this. In order to be found guilty, the government had to prove that your client in fact knew that he was violating the law. So with that steep a requirement so that he actually knew he was violating the law, how can you at the same time argue that he didn't know he was violating the law? The jury has found that he did. Well, yes, but the question is, what was the law? He was supposed to know he was violating. Okay, let's say he comes and says, okay. Sending thermal imaging stuff to China without a license. And the jury found, and there was evidence to support it, that he knew that he wasn't supposed to do that because it was illegal to do it without a license. Well, but that's what the government said after they boiled down the law. But when you look at the statute itself, which is what he was prosecuted under, 50 U.S.C., that statute, 1705, it just criminalizes the violation of any license, order, regulation, or prohibition. So if I was a foreigner, even anybody, looking at this statute, I'd say, okay. Okay, that's nice. What order is it? What regulation are you talking about? What license? Did he violate? In other words, he didn't have a license. Is that the license you're talking about? I mean, tell us, Congress. You made this law. You're criminalizing, putting people in jail. And so the prosecution pulls out some executive order that is expired. Then there's another executive order. They piggyback on top of that. And then finally they say, okay, we have these DARs. I would say that there is a regulation that prohibits exportation. And that's in the EARs. But how do you get to 1705? How do you get from the regulation itself that says you can't export these But you're going to criminalize it. And he's going to say, okay, what are you saying? It criminalizes the violation of any license. Okay, is that the license you're talking about? Any order, regulation, or prohibition? I don't know what you're talking about. In other words, I don't see that many statutes that actually criminalize certain regulations. Most of the regulations themselves have their own regulatory scheme in and of themselves. But to actually make it a criminal offense and just say any license, are there licenses that have been promulgated? Well, you know, we have your argument on hand. Okay. So anyway, that's my argument is I can't figure it out. I understood what they were trying to, what they were alleged and what he was convicted of. But, and they explained how they got there. But I'm saying how could a person know, just looking at the statute. Okay. And then going on with the conspiracy. And just to make this clear, just to set the structure, Mr. Guo worked for this company called BSK. Okay. So Mr. Zhang, Dr. Zhang, had sold these imaging cameras to BSK in China, using fake export license numbers. And that had been going on for a long time. Okay. And then at one point, Mr. Guo didn't want to work with them anymore. The company didn't. I don't know what happened. He started working with Mr. Chen. Both of Zhang and Chen are U.S. citizens, U.S. Chinese citizens. And what the prosecution did was bring in evidence of contracts that, legitimate contracts that Zhang had with BSK, not with Mr. Guo. They brought in contracts with BSK, none of which Mr. Guo signed or there was any connection to Mr. Guo. Within that one conspiracy, they alleged another conspiracy with a whole group of other people, Mr. Chen. And then there was Professor Zhu and Mr. Zhang. Okay. Now, Zhen, Zhu, and Zhang, that whole conspiracy had nothing to do with anything that Mr. Guo did. And they let in all sorts of statements about this converter and everything else that went in that really had nothing to do with what went on with Mr. Guo. And to me, that's clear hearsay. That's clear. I'm talking about the sub-conspiracy of the uncharged acts. So that, to me, had nothing to do with what was going on with Mr. Guo at all. And then the Zhang, basically they had Mr. Zhang who was clearly violating U.S. law using fake numbers, selling to BSK using fake numbers and having them believe that he was acting legally. So anyway, we're saying that shouldn't have come in and even if that came in, that sub-conspiracy with Chen, Zhu, and Zhang should have never come in. And then finally, excluding Dr. Cooper, the defense expert, the defense really needed to explain the scheme in which Mr. Guo operated. He didn't hire these agents in a covert manner. This is what people do. This is the way people in China operate. China's a flourishing country. They use agents all over the world. And it made logical sense for him to use Mr. Zhang to help him buy these products. So I wanted to save a few minutes for rebuttal. Yeah, good idea. Yeah, okay. Okay. Go. Good afternoon. May it please the Court. My name is Chris Grigg. I'm here for the United States of America. What I'm hearing and what we've heard in the argument today and seen in the briefs with respect to Juror No. 7 is a request to the Court to basically find that the district court abused its discretion, even though Juror No. 7 gave clear, definitive answers in response to questions about his ability to judge the case fairly. Counsel argued a moment ago that he never said he could be fair and impartial. The district court directly asked him, can you look these lawyers in the eye and give them a fair trial? He said, I believe I can. When the district court continued to follow up with questions about his views of law enforcement witnesses, he said, I can follow the instruction, the instruction being you are to judge law enforcement credibility as you would any other witness. When he said, will you tune out defense counsel in this case, he said, absolutely not. Will you listen to what she says and what the evidence is? Yes, sir. Those were his answers. Okay. You've covered that. Thank you, Your Honor. Defendant Nex argues that the statutes and regulatory scheme under which he was convicted is vague and ambiguous. In essence, in reply, defendant argues that AIPA fails to notify anyone of the regulations and of the particular orders for which they can be prosecuted. And specifically, he claims that 1705 does not say thermal imaging infrared cameras. In essence, though, what he's asking the court to do here is to violate the cardinal principle of construction, and that is to construe laws to uphold them, not to invalidate them. Here, at a minimum, regardless of all of the other. What they're talking about is fair notice. That's what they're talking about, what she's talking about. Yes, Your Honor. In other words, you know that certain conduct is criminal. How would a person know this? Your Honor, I think what's going on here is something of an inclusion or incorporation of whether the indictment itself was sufficient. Because what defendant is arguing is, well, it says AIPA, it says 1705. What does that mean? And what is clear here is that he violated the Export Administration Regulations general prohibitions. And plain for all to read in 736.2b1 is that you may not, and it's called general prohibition number one, you may not export an item if it's covered by an ECCN, if it's on a list, and the control reasons apply based on the country chart. That's plain for all to read. And here, at a minimum, no matter the other 84 permutations that defendant bemoans, his conduct was squarely prohibited by this regulation, which is clear for all to read. It's clear for all to read even though the standard for vagueness for economic regulations is less strict. It's a less stringent rule because, as stated in Hoffman Estates and other cases, a regulated business, a field such as this, incorporates the idea that the businesses covered are familiar with the regulations because they need to plan their economic conduct accordingly. And it also provides that they have an opportunity to seek an administrative remedy or clarification. And if the court recalls from Licensing Officer Christopher Costanzo's testimony, anybody can call the Department of Commerce. They can contact Commerce by the Internet, by phone. They can go to an office. They can seek an opinion. They can seek guidance in determining whether their particular widget is controlled or not. And in this case, if nothing else, as applied to this defendant, his conduct is squarely prohibited and the scheme is not vague in the slightest. How about how many conspiracies do we have here? Your Honor, the district court found that the defendant's behavior from 2004 until the time he was arrested in 2008 constituted a single continuous course of conduct. Beginning in 2004, as Chao testified, the defendant sought to have Chao research thermal imaging cameras via a series of emails to help you find certain products. Continuing into 2006, the defendant and his employee Chen meet Mr. Zhang in person, and Mr. Zhang tells them, I am applying for a license. Here are the terms. You need a license to export these things to China. My license covers a certain number of firehouses and so on. After Mr. Zhang then gets his export license, he specifically informs the defendant and Chen that my license covers a certain number of firehouses. It doesn't include your company, the Beijing Shenzhou Kaie Company, and I applied originally for 100 widgets. They only authorized me 20. From that point forward, every interaction with Zhang and defendant and Chen, Zhang reminds them of the licensing requirement. In the joint venture agreement, which was not objected to, Zhang testified, I inserted the requirement, the language in there, and it was my insistence to incorporate a phrase that said, I will provide thermal imaging equipment that is permissible to be exported from the United States. In each of the contracts, as Zhang testified, they were typed in Chinese. He didn't prepare them. The defendant and his employee did, Chen. In each of those contracts, the license number that Zhang was actually issued, which all parties knew, all parties being Chen and the defendant and Zhang, knew did not cover, did not authorize the export to defendant's company. That license number, nonetheless, was inserted into the contracts as prepared by the defendant and Chen. Moving forward, in May 2007, Zhang tells the defendant and Chen specifically that the cameras that defendant was later arrested smuggling out of the country in this case, those require a license.  At that point, the defendant reengages Chow, who he's known since approximately 1996, according to Chow's testimony, and sends, as he's done all along, sending him requests to research certain equipment, sends him a specific request to contact FLIR and to start ordering the very cameras that Zhang could not purchase for him. In essence, Your Honor, the defendant was the source of the economic demand for these cameras from the earliest inception of the case. He continued in that capacity. He recruited Chen. He worked with Zhang. He worked with Chow. At the end, it was only the defendant and Chow who happened to get caught here in the United States, and that's only because the two, including Mr. Chow, which as an aside in response to the Cooper argument, that the point was that Chinese folks hire Americans or people familiar with American laws to act as agents, and that's an innocent supposedly behavior. The bottom line is Chow lived in Beijing. He lived there. He was the person that the defendant ultimately retained to effect the sale with FLIR. The two of them then traveled to the United States and got caught having secreted all of the cameras in their luggage and attempting to fly straight to Beijing from LAX. And I would like to address the evidentiary issue in one other respect, and that is the record before the district court, at the time it made its evidentiary rulings, was exhaustive. There were multiple offers of proof, multiple briefs, multiple hearings. The district court had all the evidence it needed before it, and it correctly applied the proper rules in making each of its evidentiary rulings. And here in all the briefs and in arguments, nothing the defendant has shown indicates in any way that the district court abused its discretion, that any of its rulings were beyond the pale of the inferences supported by the record, or that anything that the district court did was in any way improper. And with respect to the conspiracy evidentiary issues, unless the court has other questions, I'd like to move on. Lastly, I'd like to address the Batson thing, because, again, this is an area where this court must find that the district court clearly erred in finding that there was no discrimination, clearly erred in finding that the defendant did not meet his burden to show. Well, there was no argument on that issue on the defense counsel. Not here today, that's correct. So nothing for you to point to, yeah. Unless the Court has any further questions, then I will submit and request that this Court affirm the district court. All right. Thank you. Thank you, Your Honor. Thank you, Your Honor. Just a brief rebuttal here. In terms of the statute itself, it is really overbroad. Just to say, when they talk about any order, me looking at it, I didn't even know whether they meant a court order. They don't even say the word executive order. Any regulation or prohibition. I agree, it is against the regulations to export something that's on the no export list. But that's a separate, that's not a federal criminal statute. And people need to know what's going to be criminalized. In other words, if I violate some sort of driving regulation or something like that, is that going to be a criminal kind of statute? It would be something like that. It would be like any infraction becomes breaking the law, unlawful. I was looking at some of these statutes here. Whoever knowingly submits, when you look at all the 18 U.S.C. statutes, they tell you what's prohibited. You may not do this, you may not do that. That's illegal. So I agree that, yes, it was a violation of some E.A.R. somewhere. But to have a 50 U.S.C. 17 apply to Mr. Glow's conduct is really way off base. And in terms of the conspiracies, it's very clear that there was no connection, really maybe slight connection, conspiracy number one or conduct number one. But the thing between Chan, Zhu, and Zhang had nothing to do with Mr. Glow, and they let on all this hearsay. Just with respect to the one police officer, I have to respond. When asked if he could look both counsel in the eye, he said, yes, I believe I can. But at that point he said, but to be honest, you know, defense attorneys are not my favorite animal. So, you know, with that, I think unless the Court has any other questions or comments. All right. I don't think anything further. All right. Very good. Thank you. Last but not least. Thank you. We'll recess until 9 a.m. Wednesday morning. Thank you very much. Thank you. Thank you.
judges: Pregerson, Ripple, Graber